# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

TAMER OMRAN,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

Case No. 2:23-cv-00431-RFB-BNW

**ORDER**

    Before the Court are the Stipulation for Extension of Time (ECF No. 30) and Motion for Summary Judgement (ECF No. 31) by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). For the following reasons, the Court grants the Stipulation for Extension of Time *nunc pro tunc* and denies the Motion for Summary Judgment.

**I.    PROCEDURAL HISTORY**

    Plaintiff Tamer Omran filed this action against Defendant State Farm on February 13, 2023, seeking damages for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claim practices. See ECF No. 1-1. The case was removed from state court by Defendant on March 23, 2023. See ECF No. 1. On March 29, 2023, Defendant filed an answer to the Complaint. See ECF No. 6. On October 31, 2024, Defendant filed the instant Motion for Summary Judgement. See ECF No. 31.

    This Court's Order follows.

**II.    FACTUAL BACKGROUND**

    The Court makes the following findings of undisputed and disputed facts.

### A. Undisputed Facts

On October 10, 2021, at 5:32 PM, Plaintiff was involved in a motor vehicle collision (the "Collision"), caused by an uninsured motorist. At the time, Plaintiff was driving a 2014 Dodge Caravan that did not have uninsured motorist ("UM") coverage. As a direct and proximate result of the Collision, Plaintiff suffered serious, permanent, and debilitating bodily injuries and incurred medical bills in excess of $75,000. At the time of the Collision Plaintiff had auto insurance with Defendant for the following vehicles: (1) 2014 Dodge Caravan (the "Dodge Policy"); (2) 2014 Toyota 4Runner (the "4Runner Policy"); (3) 2003 Toyota Corolla (the "Corolla Policy"); and (4) a 2012 Ford Escape (the "Ford Policy") (collectively, the "Insurance Policies"). Prior to the Collision, on September 8, 2021, Plaintiff signed an "Acknowledgement of Coverage Selection or Rejection" form expressly rejecting to receive UM coverage on the Dodge Policy. The policies for Plaintiff's other vehicles carried UM coverage in the following amounts: 4Runner Policy - $100,000/$300,000; Corolla Policy - $100,000/$300,000; and Ford Policy - $25,000/$50,000.

On December 14, 2021. Defendant sent Plaintiff's counsel correspondence advising that $100,000/$300,000 in UM coverage was portable from the 4Runner Policy to the claim Plaintiff filed for the damage caused by the Collision. On June 7, 2022, Plaintiff submitted a demand to Defendant demonstrating entitlement to and requesting the entirety of the $100,000 UM coverage available under the 4Runner Policy as represented in Defendant's December 14, 2021, correspondence. On June 30, 2022, Defendant notified Plaintiff's counsel that although the 4Runner Policy had $100,000 UM coverage, the Dodge Policy had no UM coverage. Thus, Defendant would only pay Plaintiff the state minimum of $25,000. Subsequently, Defendant sent Plaintiff a check for $25,000. On August 25, 2022, Plaintiff's counsel sent correspondence to Defendant attempting to compel Defendant to pay an additional amount pursuant to the 4Runner Policy's UM coverage. Defendant's refusal prompted Plaintiff to initiate this lawsuit raising the following causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Unfair Claim Practices.

### B. Disputed Facts

The Parties dispute the following facts regarding the Dodge Policy and Defendant's UM

portability. Whether the UM coverage in the other auto insurance policies owned by Plaintiff was portable to the Dodge Policy. Whether Defendant's standard practice was to pay the insured the highest or lowest amount when transferring UM coverage.

### III.     LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried [their] burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### IV.     DISCUSSION

In the Complaint, Plaintiff raises causes of action for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Unfair Claim Practices. Defendant argues that Plaintiff cannot show that they breached the insurance contract, the implied covenant of good faith, or engaged in unfair claim practices. Accordingly, Defendant asserts that they are entitled to judgment as a matter of law.

An insurance policy is a contract, and questions of contract interpretation are questions of law. See Fed. Ins. Co. v. Coast Converters, 339 P.3d 1281, 1284 (Nev. 2014). When construing an insurance policy under Nevada law, the Court must read the policy "as a whole," and "its language should be analyzed from the perspective of one untrained in law or in the insurance business. Policy terms should be viewed in their plain, ordinary and popular connotations." Fourth St. Place v. Travelers Indem. Co., 270 P.3d 1235, 1239 (Nev. 2011) (citing Am. Excess Ins. Co. v. MGM, 729 P.2d 1352, 1354 (Nev. 1986)). If a term in an insurance policy is ambiguous, it will be construed against the insurer, because the insurer drafted the policy. See Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011). "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." Id. (citing United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1157 (Nev. 2004)). "[A]lthough an individual clause standing alone might appear to contain no ambiguity, the policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." Nat'l Union Fire Ins. v. Reno's Exec. Air, 682 P.2d 1380, 1383 (Nev. 1984). "A court must look to the entire contract of insurance for a true understanding of what risks are assumed by the insurer and what risks are excluded." Id. "While clauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, clauses excluding coverage are interpreted narrowly against the insurer." Id. However, the Court must be careful not to "rewrite contract provisions that are otherwise ambiguous . . . [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." Fed. Ins. Co., 339 P.3d at 1285 (citing Farmers Ins. Grp. v. Stonik ex rel. Stonik, 867 P.2d 389, 391 (1994)).

When an insurer wishes to exclude coverage, the insurer "must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding coverage under the exclusion is the only interpretation of the exclusion that could be fairly made, and (3) establish that the exclusion clearly applies to this particular case." Powell, 252 P.3d at 647.

**A. Breach of Contract**

The Court first addresses Plaintiff's breach of contract claim. A failure to cover an event that is covered under an insurance policy constitutes a breach of contract under Nevada law. See

Fourth St. Place, 270 P.3d at 1239. Thus, the Court begins with contract interpretation.

Plaintiff argues that the Insurance Policies are not written in obvious unambiguous language and are unclear about how portable UM coverage applies. Plaintiff contends that Defendant breached its contractual obligations when Defendant relied on an ambiguous and therefore unenforceable contractual provision. Plaintiff asserts that because the individual responsible for causing the accident and resulting damages did not have automobile insurance, Plaintiff's 4Runner Policy's portable UM coverage should have been available and applied to the claim submitted for the 2014 Dodge Caravan.

Defendant asserts that the Insurance Policies are unambiguous and should be enforced according to their plain meaning. Additionally, Defendant contends that Plaintiff signed an Acknowledgement of Coverage selection or rejection which stated that by executing the form Plaintiff was rejecting uninsured motor vehicle coverage entirely for the 2014 Dodge Caravan. Finally, Defendant argues that Plaintiff does not provide a rationale for his contention that the UM coverage from the 4Runner Policy applies rather than the UM coverage for the Corolla Policy or the Ford Policy.

The Court finds that the Insurance Policies, when read as a whole, are ambiguous in terms of UM coverage provided and the portability of UM coverage. This ambiguity is reflected in communications from State Farm itself. On two separate occasions, December 14, 2021, and June 7, 2022, State Farm explicitly indicated the Plaintiff's 4Runner Policy provided "portable" UM insurance for the accident in the Dodge. Specifically, On December 14, 2021, after reviewing the coverage provided by the Insurance Policies, Charles Sutherland, Defendant's Claim Specialist, notified Plaintiff via written correspondence that the 4Runner UM Policy was portable and would provide UM benefits in the amount of $100,000 for Plaintiff's claim related to the collision that occurred on October 10, 2021. On June 7, 2022, Sutherland again indicated that the UM coverage was portable for the accident. These communications were themselves not ambiguous about the availability of UM coverage based upon the portability of UM coverage in the 4Runner Policy. Indeed, the June 7 communication acknowledges the UM exclusion for the Dodge Policy but confirms that there is still UM coverage based upon the "Household Auto Policy Endorsement."

The language of the Endorsement explicitly recognizes insurance that is not tethered to a particular vehicle. State Farm's current assertion that the UM coverage is not portable or applicable is belied by these communications.

The Court also rejects State Farm's argument that the language of the Endorsement is unambiguous as to UM coverage. The Endorsement reads:

> For an INSURED who sustained BODILY INJURY while OCCUPYING a CAR or MOTOR VEHICLE OWNED by YOU or any RESIDENT RELATIVE if it is not YOUR CAR or a NEWLY ACQUIRED CAR to the extent the limits of this coverage exceed the minimum limits required by law for BODILY INJURY. The minimum limits required by law for BODILY INJURY coverage in Nevada are $25,000 PER PERSON and subject to the PER PERSON LIMIT. $50,000 PER ACCIDENT . . .

This language does not suggest that UM coverage is limited to a particular vehicle. Rather it references an "insured." The Court finds the language to be ambiguous as to coverage. When an insurance policy clause is ambiguous, the ambiguity must be resolved against the insurer and in favor of the insured. See Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co., 184 P.3d 390, 392 (Nev. 2008). The Court thus construes the language against State Farm and finds that Plaintiff's 4Runner UM coverage was portable and applied to the relevant accident.

The Court now turns to the policy limit for such coverage. The Court finds that language regarding the policy limit for this portable coverage is also ambiguous. State Farm initially indicated on December 14 that the limit was $100,000/300,000 for the portable coverage. State Farm later indicated that the limit was $25,000 and tendered a check for that amount. The Endorsement references $25,000 and $50,000 as the "minimum limits required by law" but it does not specify in clear language what the actual limit is for this coverage. The Court again construes this ambiguous language as to the limit against State Farm and finds that the limit is $100,000/300,000 as stated in State Farm's initial communication on December 14.

Finally, the Court finds that State Farm breached the contract. As the Court has found that the policy was portable, the Court finds as a matter of law that State Farm breached the contract by taking the position that the policy was not portable and not considering a claim in excess of

$25,000. The Court has now construed the contract based upon the ambiguities. Based upon this construction and the undisputed facts of this case, the Court finds that the accident here was covered by the UM coverage under the 4Runner Policy and was subject to a $100,000/300,000 policy limit.

The Court will leave it to the jury to decide how much to award in damages on this claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts that Defendant breached the implied covenant of good faith and fair dealing when it failed to apply the UM coverage on the 4Runner to the 2014 Dodge Caravan. Defendant argues that when they declined to provide UM coverage to the Dodge Caravan, they were abiding by the terms of the insurance contract and engaging in good faith.

The covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." State, Dep't of Transp. v. Eighth Jud. Dist. Ct., 402 P.3d 677, 683 (Nev. 2017) (internal quotation marks omitted). An implied covenant of good faith and fair dealing exists in all contracts. The covenant of good faith and fair dealing prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other. When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who did not act in good faith. Reasonable expectations are determined by the various factors and special circumstances that shape these expectations. See Constr., Inc. v. Helix Elec. of Nev., LLC, 509 P.3d 49, 51 (Nev. 2022). A claim for bad faith is established when a Plaintiff shows the following: (1) the plaintiff and defendant were parties to an agreement; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. See Allstate Ins. Co. v. Miller, 212 P.3d 318, 324 (Nev. 2009). Good faith is a question of fact. See Consol. Generator-Nevada v. Cummins Engine Co., 971 P.2d 1251, 1256 (Nev. 1998).

The Court finds that there are genuine issues of material fact as to the bad faith claim in this case. First, it is clear that the litigants in this action are parties to several insurance contracts in which the Defendant owes a duty of good faith to Plaintiff. Next, the Court considers whether

the Defendant breached by performing in a manner that was unfaithful to Plaintiff. As noted above, the Court finds that Plaintiff has shown that Defendant breached the contract. Although Defendant initially communicated to Plaintiff that the UM Coverage at issue would be portable to the Dodge Policy, Defendant subsequently decided that the UM coverage was not portable based on their interpretation of ambiguous contract terms. Accordingly, a jury could find that Plaintiff's justified expectations were denied and that State Farm acted in bad faith. Therefore, the Court denies summary judgment on this claim.

### C.  Unfair Claim Practices

Plaintiff contends that Defendant engaged in unfair claim practices when they failed to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim. Furthermore, Plaintiff contends that Defendant's failure to implement reasonable standards for the prompt investigation and processing of claims is indicative of Defendant's unfair claim practices. Defendant argues that Plaintiff has not identified an industry standard they violated or described how State Farm was deficient in responding to Plaintiff's claim.

Nevada's Unfair Claims Practices Act gives insured individuals a private right of action against their insurers "for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 [of the Act] as an unfair practice." Nev. Rev. Stat. Ann. § 686A.310(2). Subsection 1 provides sixteen causes of action. Although Plaintiff does not identify which causes of action listed in subsection 1 Defendant allegedly violated, the Court construes the Complaint and the facts in the record as alleging a violation of § 686A.310(1)(a).

The Court finds that there are genuine issues of disputed fact as to whether State Farm violated the Unfair Claims Practices Act. Section 686A.310(1)(a) prohibits insurance companies from "[m]isrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue." Plaintiff has shown that Defendant misrepresented provisions related to the UM coverage provided in the Insurance Polices with State Farm. Furthermore, Plaintiff provides adequate support for their assertion that Defendant did not respond promptly to communications and failed to adopt or implement reasonable company standards for the investigation and processing of claims. Additionally, the Court's finding that the Insurance

Policies were ambiguous supports this claim. The Court thus denies summary judgment on this claim.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Parties' Stipulation for Extension of Time (ECF No. 30) is **GRANTED** *nunc pro tunc.*

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that the Parties shall file a Joint Pretrial Order by **November 7, 2025**.

**DATED:** September 30, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**